UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------X

Danielle Moore,

                  Plaintiff,           06-CV-1973 (CPS)(JO)

    - against -

                                      MEMORANDUM OPINION
New York State Division of Parole,     AND ORDER
Patrick Hoy, S.P.O. John Barnett,
Robert Oeser, Jose Burgos, P.O. Steven
Fiorino, and John and Jane Doe 31-10,
individually and in their official
capacities, (the names John and Jane Doe
being fictitious, as the true names are
presently unknown),

                  Defendants.

----------------------------------------X


    Plaintiff Danielle Moore ("Moore") brings this action

against defendants New York State Division of Parole ("Division

of Parole"), Patrick Hoy ("Hoy"), John Barnett ("Barnett"),

Robert Oeser ("Oeser"), and Jose Burgos ("Burgos"), individually

and in their official capacities.[1]  Plaintiff claims that

defendants discriminated against her on account of her race and

sex in violation of Title VII of the Civil Rights Act of 1964, 42

U.S.C. § 2000e *et seq.* ("Title VII"), 42 U.S.C. § 1981, New York

State Executive Law § 296 *et seq.*, and Sections 8-107 *et seq.* of

the Administrative Code of the City of New York.  Plaintiff seeks

---

[1] At oral argument on September 15, 2008, the parties stipulated to the
dismissal without prejudice of all claims against additional defendants named
in the original complaint Steven Fiorino ("Fiorino") and John/Jane Does #31-10
[sic], who have not been served or identified.

-2-

compensatory, economic, and punitive damages, as well as
declaratory and injunctive relief, and attorney's fees.
Presently before the Court is defendants' motion for summary
judgment pursuant to Rule 56 of the Federal Rules of Civil
Procedure.  For the reasons set forth below, defendants' motion
is denied with respect to plaintiff's Title VII retaliation
claims relating to her March 2006 suspension and termination
against the Division of Parole, and plaintiff's New York State
and City retaliation claims relating to her March 2006 suspension
and termination against defendants Burgos and Oeser and otherwise
granted.  Plaintiff is granted leave to file an amended complaint
alleging violations of 42 U.S.C. § 1983 within 30 days of the
date of this opinion.

**Background**

The following facts are drawn from the parties' papers
submitted in connection with this motion.  Disputes are noted.

Plaintiff Danielle Moore is an African-American female who
was employed as a parole officer by defendant New York State
Division of Parole from 1988 to 2006. Declaration of Danielle
Moore ("Moore Decl.") ¶ 3, Plaintiff's Exhibit ("Pl. Exh.") 1.

In January 2003, plaintiff began working in the Queens 3
Area Office, where a high proportion of the officers were African
American females.  Deposition of Danielle Moore ("Moore Dep.") at
79-81, Defendants' Exhibit C ("Def. Exh. C"); Queens 3 Area

-3-

Office Roster, December 31, 2004, Declaration of Jose Burgos Exhibit ("Burgos Decl. Exh.") A.

Defendant Patrick Hoy, a Caucasian male, became the Bureau Chief of the Queens 3 Area Office in January 2003.  Hoy was assigned to the Queens 3 Area Office to improve the office's perceived lack of accountability.  Deposition of Jose Burgos ("Burgos Dep.") at 122, Pl. Exh. 4.

In April 2003, plaintiff was disciplined in the form of a counseling memorandum issued for failing to call from the field and report to her supervisor as required.  *Id*. at 43-45. While plaintiff was employed by the Division of Parole, counseling memoranda remained in an officer's file, but did not result in lost pay.  Moore Dep. at 29-30.  Thereafter, Hoy reassigned plaintiff to the supervision of Senior Parole Officer John Barnett, an African-American male.  Moore Decl. ¶ 5.

Plaintiff states, and defendants dispute, that Hoy harassed African-American female parole officers, including plaintiff, and treated them differently than he did male, Caucasian parole officers.  Moore Decl. ¶¶ 8, 13; Deposition of Deborah Raiford ("Raiford Dep.") at 30-32, Pl. Exh. 2.  According to plaintiff, defendant Hoy harassed her by taking away a program that she had been running, reassigning her to new cases, and micro-managing her.  Moore Dep. at 29, 35-38, 53.

-4-

Plaintiff states that Hoy often did not speak directly to
her, but that he frequently walked past her office to see if she
was at her desk and would then send Barnett to speak with her
afterwards.  *Id*. at 54, 72-73.  Barnett micro-managed her, giving
her detailed instructions in writing on how she should perform
her job.  *Id*. at 48.  Plaintiff states that when she had case
conferences with Barnett he would tell her to handle a case in a
certain manner, but then after she followed his instructions,
would tell her she did things incorrectly.  *Id*. at 72-73.
According to plaintiff, an African-American female co-worker who
had similar problems with Barnett confronted him and Barnett
reversed himself.  *Id*. at 93, 96.

In May 2003, the Division of Parole issued a memorandum
requiring parole officers to adhere to fixed schedules.
Plaintiff received a copy of the memorandum.  Grievances filed by
Danielle Moore, dated August 25, 2003, Burgos Decl. Exh. B.

On June 12, 2003, plaintiff received two counseling
memoranda, the first instructing her to adhere to her fixed
schedule and the second citing her for late arrival at a firing
range for training.  *Id.*

On July 14, 2003, plaintiff filed a grievance against Hoy
and Barnett alleging that they had harassed her and that her pay
had been wrongfully docked for allegedly leaving work early.

-5-

On July 31, 2003, defendant Robert Oeser, a Division of Parole Labor Relations Representative and a Caucasian male, conducted an investigation of plaintiff's work performance, including her handling of several cases.  Moore Dep. at 46-51. When Hoy, Oeser, and Barnett met with plaintiff to serve her with papers in connection with the investigation, Hoy did not permit Deborah Raiford, a co-worker and union representative, to participate in the discussion.  Moore Dep. at 49; Raiford Dep. at 64-65.

On August 7, 2003, plaintiff received a counseling memorandum with respect to her handling of a case.  Grievances filed by Danielle Moore, dated August 25, 2003.

On August 25, 2003, plaintiff again filed two grievances requesting that Hoy and Barnett cease their harassment and discrimination.  *Id.*  In the first grievance, plaintiff alleged that Hoy and Barnett did not allow her to set her own schedule as other parole officers were permitted to do and that their requirement that she seek their permission prior to changing her schedule had alienated her from her co-workers, created issues of safety when she had to do night visits alone, and interfered with her ability to perform her duties as a parole officer.  *Id.*  In the second grievance, plaintiff alleged that the June 12 and August 7, 2003 counseling memoranda should not have been issued and requested that the memoranda be removed from her file.

-6-

On October 7, 2003, regional director James Dress met with plaintiff to discuss her grievances.  On October 25, 2003, Dress rejected plaintiff's claims of harassment and discrimination and found that Barnett's control of plaintiff's schedule stemmed from "legitimate supervisory concerns."  Memorandum from James Dress ("Dress Memo.") at 3, Burgos Exh. B.  Nevertheless, Dress removed one of the June 12, 2003 memoranda from plaintiff's files because Barnett did not have a counseling session prior to issuing the memorandum as required by the agency. *Id.* Dress determined that the other June 12, 2003 memorandum and the August 7, 2003 memorandum should not be removed from plaintiff's file. *Id.* Plaintiff did not appeal Dress' determination, as permitted by the collective bargaining agreement.

Plaintiff states that after she filed her grievances, defendants Hoy and Barnett increased their harassment.  Moore Decl. ¶ 17.  Plaintiff states that the harassment interfered with her work performance.  *Id.* ¶ 21.  Plaintiff states that she continued to complain of discrimination in 2003, 2004, and 2005, informally and verbally, but that no one at the Division of Parole addressed her concerns.  *Id*. ¶ 16.

On March 11, 2004, plaintiff was arrested for allegedly having sex with a minor under the age of fifteen.  Plaintiff was questioned by defendant Oeser about the incident and on March 12, 2004, defendant Jose Burgos, Director of Human Resource

-7-

Management for the Division of Parole, sent plaintiff a notice of
suspension without pay.  Notice of Suspension, Burgos Decl. Exh.
D.  On April 8, 2004, Burgos sent plaintiff a Suspension Notice
of Discipline, stating that she was charged with violating the
Division's Employment Manual by having sex with a minor and by
inaccurately reporting her address in order to be eligible for a
Division parking placard; that a disciplinary proceeding had been
initiated against her; and that the Division of Parole was
seeking her termination.  Suspension Notice of Discipline, Burgos
Decl. Exh. D.  She was also notified that she would remain on
suspension pending the completion of the proceeding. *Id.*
Plaintiff states that her co-workers Darcy Ames and Debra White
told her that Hoy was responsible for her suspension.  Moore Dep.
at 120-1.

Plaintiff sought arbitration with respect to the suspension.
Three days of hearings were held during which plaintiff was
represented by an attorney.  On November 18, 2004, arbitrator
John G. Watson issued a written decision.  Arbitration Decision,
dated November 18, 2004, Burgos Decl. Exh. C.  Watson determined
that it was appropriate for the Division of Parole to suspend
plaintiff based on the criminal charges, but found her not guilty
of the sexual misconduct charges based on the evidence before
him.  *Id.* at 10-1.  He determined that plaintiff should be
reinstated, but that plaintiff should not receive back pay for

-8-

the period of suspension.  *Id.* at 12.  The arbitrator found
plaintiff guilty on the charge of misreporting her address and
determined a penalty of a thirty-calendar-day disciplinary layoff
without pay was appropriate.  *Id*.  Plaintiff did not challenge
the arbitrator's decision.

At an unspecified point in time, the criminal charges
against plaintiff were dropped.  Deposition of Robert Oeser
("Oeser Dep.") at 101, Pl. Exh. 3.

Plaintiff was reinstated on December 9, 2004.  Moore Decl.
¶ 28.  She was, however, assigned to a desk job and did not
receive a parolee caseload.  She states that upon her return to
the office Hoy instructed her not to use the telephone and to
stay in her office.  Moore Dep. at 60, 69.  According to
plaintiff, Hoy and Barnett resumed their allegedly excessive
scrutiny of her work and micro-management, Moore Dep. at 67-8,
and her co-workers were afraid to be seen with her because they
feared that Hoy would harass them as well.  Moore Decl. ¶ 19;
Moore Dep. at 68-9.

While under the supervision of Hoy and Barnett, plaintiff
did not personally hear them make racist or sexist remarks.
Moore Dep. at 84.  Plaintiff states, and defendants dispute, that
Daniel McCollough, the Administrate Law Judge for the Division of
Parole, told her that Hoy was known to be a racist and had made a
racist joke that "you f*** 'em, you don't marry them," referring

-9-

to African-American women.  Moore Decl. ¶ 12; Moore Dep. at 77-78; Raiford Dep. at 49-50.  In 2004 or 2005, plaintiff states, and defendants dispute, that Hoy issued a memo to his all black staff using the word "niggerly."  Raiford Dep. at 49.  According to defendants, Hoy used the term "niggardly" in the sense of stinginess.  Declaration of Patrick Hoy ("Hoy Decl.") ¶ 5.

Plaintiff states that she heard about and observed other African-American women who were subject to discrimination by Hoy and Barnett.  According to plaintiff, she observed Hoy and Barnett micro-managing co-worker Gayle Brooks.  Hoy would interrupt Brooks during the supervision of her parolees, require her to report to the office before going to the field, spoke to her in a condescending manner, and issued her counseling memoranda.  Moore Dep. at 93-4.  Plaintiff states that she also heard that their co-worker (first name not provided) Taylor was chastised by Hoy and saw her co-workers Debra Boyd and Yolanda Houston chastised by Hoy, all of whom were subsequently reassigned to other offices.  *Id.* at 75, 95.

Plaintiff's co-worker Deborah Raiford, who was not directly supervised by Hoy, states that Deborah Boyd and Yolanda Houston both complained to her about Hoy's behavior towards them. Raiford Dep. at 33-39.  In addition, Parole Officer Frances Weeks filed a grievance against Hoy for discrimination and Parole Officer Betty Kyle filed a grievance because Hoy did not provide

-10-

her with clearance to fly with a weapon, while he allowed other officers to do so. *Id*. at 41-42, 47-49. According to Raiford, Hoy also targeted her by issuing counseling memoranda and discussing her performance with Raiford's direct supervisor, and that once she transferred and was replaced by a white woman, Hoy stopped issuing the memoranda. *Id*. at 54-57.

According to defendants, the only grievances or complaints on file with the Division of Parole against defendant Hoy are those filed by Betty Kyle and Frances Weeks. Betty Kyle's grievance led to a complaint before the State Division of Human Rights which was dismissed on February 13, 1998 as unsubstantiated. Declaration of Jose Burgos ("Burgos Decl.") ¶ 13. Weeks filed a civil action against the Division of Parole, which was dismissed. *Id*. Deborah Boyd also complained to defendant Burgos that defendant Hoy was difficult to work with, but did not tell him that she believed Hoy's actions were motivated by race and/or gender. Burgos Dep. at 167.

On January 20, 2005, plaintiff transferred to the Brooklyn office. Plaintiff did not have contact with Hoy or Barnett after her transfer. Hoy Decl. ¶ 4; Barnett Decl. ¶ 5.

In March and May 2005, defendants state, and plaintiff disputes, that plaintiff attended meetings at which the Division of Parole updated her on the weapon possession policy. Moore Decl. ¶ 33; Memorandum from Lee Tennyson, Area Supervisor, dated

-11-

April 18, 2006, Burgos Decl. Exh. F.  According to defendants,
Division of Parole policy permitted parole officers to possess
and use the Glock model, 9mm semi-automatic pistol, and in the
absence of a pistol permit, as was, apparently, the case with
plaintiff, the Glock model was the only type of firearm that
parole officers were permitted to purchase or possess.  New York
State Division of Parole Policy and Procedures Manual, Burgos
Decl. Exh. E.  Plaintiff states that during her tenure, officers
were permitted to possess any firearm model for personal use, as
long the officer had ID and kept the weapon secured.  Moore Decl.
¶ 33; Raiford Dep. at 75-76.

In June 2005, Hoy retired from the Division of Parole.  Hoy
Decl. ¶ 2.

On November 10, 2005, plaintiff filed a charge of
discrimination and retaliation with the Equal Employment
Opportunity Commission (EEOC). Moore Decl. ¶ 31.

In January 2006, plaintiff requested the assistance of the
Division of Parole and New York City Police Department in order
to enter her own apartment because of threats from a male co-
resident.  Plaintiff reported to the officers who accompanied her
to her apartment that her Smith & Wesson 38-caliber pistol with a
magazine containing six rounds of ammunition was missing.  The
Division of Parole was subsequently informed of her possession of
an unauthorized weapon and Steven Fiorino, an Investigator in the

-12-

Division of Parole's Office of Professional Responsibility,
investigated the matter.

On January 31, 2006, the EEOC issued a right to sue notice.

On February 8, 2006, Fiorino issued a report in which he
confirmed that plaintiff's possession of the Smith & Wesson was
unauthorized and recommended administrative action.
Investigative Report of PO Steven Fiorino, Burgos Decl. Exh. G.
The report did not recommend what action to take.  *Id.;*
Declaration of Steven Fiorino ¶ 5.

On March 23, 2006, defendant Burgos sent a letter to
plaintiff informing her that a disciplinary proceeding had been
initiated because of her unauthorized possession of a firearm and
that the Division of Parole was seeking her termination.
Temporary Reassignment Notice of Discipline, dated March 23,
2006, Burgos Decl. Exh. H.  The notice stated that unless a
grievance was filed within 14 calendar days of the date of
service, plaintiff would be terminated.  *Id.* The notice also gave
plaintiff the option of seeking arbitration.  *Id.*  A second
letter was sent on that date informing plaintiff that she was
being temporarily reassigned to the Queensboro CF Parole Office
and that she could opt for suspension, without pay, instead.  *Id.*

On April 27, 2006, plaintiff commenced this action.

On June 5, 2006, plaintiff received a letter from defendant
Burgos informing her that because she had not filed a grievance

-13-

or applied for arbitration, she would be terminated as of June 9, 2006.  Letter from Jose Burgos, dated June 2, 2006, Burgos Decl. Exh. H.

On June 5, 2006, plaintiff contacted defendant Oeser and requested that she be allowed to resign in lieu of termination. Letter from Robert Oeser, dated June 12, 2006, Burgos Decl. Exh. H.  Oeser agreed to the request and plaintiff faxed a written resignation, to take effect on June 16, 2006.  *Id.*  On June 8, 2006, plaintiff requested by fax that the resignation be withdrawn.  *Id.*  On June 12, 2006, Oeser informed plaintiff that because she had withdrawn her resignation, the termination of her employment was now in effect.  *Id.*

According to plaintiff, the Division of Parole failed to inform her attorney prior to terminating her.  Defendants state that the attorney who represented plaintiff in the 2004 arbitration contacted defendant Oeser to find out what the 2006 charges were about but never followed up with the Division of Parole after the conversation with Oeser.  According to defendants, Oeser told the attorney to decide if he wanted to represent plaintiff and to follow up with the Division of Parole to set up a settlement conference.  Oeser Dep. at 87-88.

-14-

Plaintiff states, and defendants dispute, that other employees[2] who faced similar gun charges received preferential treatment in the disciplinary process resulting in short suspensions or other sanctions short of termination.  Moore Decl. ¶ 34; Division of Parole Discipline Records, Pl. Exh. 5. According to defendants, the employees cited by plaintiff faced charges unrelated to weapons or weapons charges of a lesser magnitude.  Employee Records, Burgos Decl. Exh. I.

On September 18, 2006, Plaintiff filed an additional charge of discrimination and retaliation with the EEOC with respect to the 2006 suspension and termination.  On November 29, 2006, the EEOC issued another right to sue letter with respect to these new charges.

**Discussion**

Summary Judgment Standard

A court must grant a motion for summary judgment if the movant shows that "there is no genuine issue as to any material fact" and that "the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  Summary judgment is appropriate "[w]hen the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S.

---

[2] Plaintiff does not specify the race or gender of these "other employees."

-15-

574, 587 (1986). "An issue of fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Elec. Inspectors, Inc. v. Vill. of E. Hills*, 320 F.3d 110, 117 (2d Cir. 2003). A fact is material when it "might affect the outcome of the suit under the governing law." *Id*.

The party seeking summary judgment has the burden of demonstrating that no genuine issue of material fact exists. *Apex Oil Co. v. DiMauro*, 822 F.2d 246, 252 (2d Cir. 1987). In order to defeat such a motion, the non-moving party must raise a genuine issue of material fact. Although all facts and inferences therefrom are to be construed in the light most favorable to the non-moving party, the non-moving party must raise more than a "metaphysical doubt" as to the material facts. *See Matsushita*, 475 U.S. at 586; *Harlen Assocs. v. Vill. of Mineola*, 273 F.3d 494, 498 (2d Cir. 2001). The non-moving party may not rely on conclusory allegations or unsubstantiated speculation. *Twin Labs., Inc. v. Weider Health & Fitness*, 900 F.2d 566, 568 (2d Cir. 1990). Rather, the non-moving party must produce more than a scintilla of admissible evidence that supports the pleadings. *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 289-90 (1968); *Niagara Mohawk Power Corp. v. Jones Chem. Inc.*, 315 F.3d 171, 175 (2d Cir. 2003). In deciding such a motion the trial court must determine whether

-16-

"after resolving all ambiguities and drawing all inferences in favor of the non-moving party, a rational juror could find in favor of that party." *Pinto v. Allstate Ins. Co.*, 221 F.3d 394, 398 (2d Cir. 2000).

<u>Sovereign Immunity</u>

Defendants argue that plaintiff's § 1981, New York State and New York City Human Rights Law claims against the Division of Parole are barred by sovereign immunity.

Under the Eleventh Amendment's grant of sovereign immunity,[3] "nonconsenting States may not be sued by private individuals in federal court." *Bd. of Trustees v. Garrett*, 531 U.S. 356, 363 (2001).[4] "This bar exists whether the relief sought is legal or equitable." *Dube v. State Univ. of New York*, 900 F.2d 587, 594 (2d Cir. 1990)(quoting *Papasan v. Allain*, 478 U.S. 265, 276 (1986)). That immunity extends "not only to a state, but also to entities considered 'arms of the state.'" *McGinty v. New York*, 251 F.3d 84, 95 (2d Cir. 2001).

---

[3] The Eleventh Amendment reads: "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."

[4] While the Eleventh Amendment by its terms does not bar suits against a State by its own citizens, the Supreme Court has consistently held that an unconsenting state is immune from suits brought in federal courts by its own citizens as well by citizens of another state. *See, e.g.*, *Kimel v. Florida Board of Regents*, 528 U.S. 62, 72-73 (2000).

-17-

The only exceptions to immunity are where the state has waived its immunity or it was validly abrogated by Congress. *Clissuras v. City of New York*, 359 F.3d at 81 n.3 (2d Cir. 2004). The Division of Parole, a New York State entity established by New York Executive Law § 259, has not waived its immunity to suit in federal court, and Congress, in enacting § 1981, did not override New York State's Eleventh Amendment immunity. *See Quern v. Jordan*, 440 U.S. 332, 345 (1979); *Cajuste v. Lechworth Dev. Disabilities Serv.*, No. 03-CV-0161, 2005 WL 22863, at *3 (S.D.N.Y. 2005) (New York has not waived its immunity and consented to suit in federal court under § 1981 and Congress's enactment of § 1981 did not override the immunity that the states and their agencies enjoy under the Eleventh Amendment).[5] Therefore, plaintiff's § 1981 claims against the Division of Parole are barred.

Nor does New York State Executive Law § 296 waive the state's immunity to federal court lawsuits, *Lambert v. New York State Office of Mental Health,* No. 97-CV-1347, 2000 WL 574193, at *7 (E.D.N.Y. 2000)(citing cases), and "[t]he City of New York

---

[5] By way of contrast, in *Fitzpatrick v. Bitzer,* the Supreme Court held that Congress, by amending Title VII in 1972 to include state and local governments as "employers," expressed a clear intention to abrogate the states' Eleventh Amendment immunity to suit under Title VII. *Fitzpatrick v. Bitzer*, 427 U.S. 445, 449 n.2 (1976). Thus, as the Second Circuit has noted, "a state and its agencies have been subject to suit under Title VII since 1972 and have no Eleventh Amendment immunity." *Davis v. State Univ. of New York*, 802 F.2d 638, 639 n.1 (2d. Cir. 1986).

-18-

does not have the power to abrogate the immunity of the State[.]"
*Feingold v. New York,* 366 F.3d 138, 149 (2d Cir. 2004); *see also*
*Koumantaros v. City Univ. of New York*, No. 03-CV-10170, 2007 WL
840115, at *5 (S.D.N.Y. 2007). Accordingly, plaintiff's New York
State and New York City Human Rights Law claims against the
Division of Parole are dismissed.

Title VII Claims Against the Division and Others[6]

Title VII prohibits employment discrimination based on an
individual's sex and race. 42 U.S.C. § 2000e-2(a). To succeed on
a Title VII discrimination claim, the plaintiff must first offer
"evidence adequate to create an inference that an employment
decision was based on a discriminatory criterion illegal under
the Act." *Int'l Brotherhood of Teamsters v. United States*, 431
U.S. 324, 358 (1977). In producing such evidence, a plaintiff
establishes a prima facie case, creating a presumption of
discrimination which shifts the burden to the defendant. In
order to rebut the presumption, the defendant must present a
legitimate, non-discriminatory reason for the adverse employment
action. *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248,
255 (1981). The burden then shifts to the plaintiff to prove
that the stated reason is pretext, and "that discrimination was

---

[6] An employer's agents, including those who are in supervisory
positions, cannot be held individually liable under Title VII. *Mandell v.
County of Suffolk*, 316 F.3d 368 (2d Cir. 2003). Accordingly, plaintiff's
Title VII claims are dismissed as to defendants Hoy, Barnett, Burgos, and
Oeser.

-19-

the real reason for the employment action." *Graham v. Long Island R.R.*, 230 F.3d 34, 38 (2d Cir. 2000)(citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973)); *Fisher v. Vassar College*, 114 F.3d 1332, 1336 (2d Cir. 1997)(en banc), *cert. denied*, 522 U.S. 1075 (1998)).

*1. Statute of Limitations*

Prior to filing a civil action challenging an employment practice under Title VII, an employee must first file a charge with the EEOC within 300 days of the alleged discriminatory act. 42 U.S.C. § 2000e-5(e)(1); *Ledbetter v. Goodyear Tire & Rubber Co.*, 127 S.Ct. 2162, 2167 (2007); *Mudholkar v. Univ. of Rochester*, No. 06-CV-4732, 2008 WL 213888, at *2 (2d Cir. 2008) (citing *Butts v. City of NY Dep. Of Hous. Pres. and Dev.*, 990 F.2d 1397, 1401 (2d Cir. 1993)). Allegations of discrete acts of discrimination, such as termination, that occurred prior to the 300-day period are time-barred, even if related to acts of discrimination that occurred within the 300-day period. *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113-14 (2002). However, the time-barred acts "may constitute relevant background evidence in a proceeding in which the status of a current practice is at issue." *Id.* at 112 (internal quotation marks and citation omitted).

A plaintiff may assert a hostile work environment claim under Title VII if one predicate act occurs within the filing

-20-

period, which is consistent with Title VII's requirement that the statute of limitations begins to run once the act has "occurred." *Id.* at 109. Since all of the predicate acts are part of a single claim, "the entire time period of the hostile environment may be considered by a court for the purposes of determining liability." *Id.*

In the present action, the first 300-day period commenced on January 14, 2005, since plaintiff filed the first EEOC charge on November 10, 2005. As a result, plaintiff's discrimination and retaliation claims in connection with the 2004 suspension, as well as her discrimination claim stemming from the issuance of counseling memoranda in 2003, are time-barred and are dismissed. However, because plaintiff filed her second EEOC charge alleging retaliation and disparate treatment on September 18, 2006, her claims in connection with the 2006 suspension and termination are timely.

Plaintiff's hostile work environment claim is also timely. Plaintiff alleges that she was subjected to a hostile work environment on an ongoing basis from 2003 until her transfer on January 20, 2005. Moore Dep. at 67-69. Because Plaintiff has alleged acts that occurred on and after January 14, 2005, the

-21-

beginning of the first 300-day period, her hostile work environment claim is not time-barred.[7]

2. *Merits of the Hostile Work Environment Claim*

The Supreme Court has interpreted Title VII to prohibit "requiring people to work in a discriminatorily hostile or abusive environment." *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21 (1993)(citing *Meritor Savings Bank, FSB v. Vinson*, 477 U.S. 57, 64 (1986)). To succeed on a hostile work environment claim, a plaintiff must show: "'(1) that the workplace was permeated with discriminatory intimidation that was sufficiently severe or pervasive to alter the conditions of [his or] her work environment, and (2) that a specific basis exists for imputing the conduct that created the hostile environment to the employer.'" *Petrosino v. Bell Atlantic,* 385 F.3d 210, 221 (2d Cir. 2004)(quoting *Mack v. Otis Elevator Co.*, 326 F.3d 116, 122 (2d Cir. 2003)).

"Generally, the same standards apply to both race-based and sex-based hostile environment claims." *Richardson v. New York State Dep't of Corr. Servs.*, 180 F.3d 426, 436 n.2 (2d Cir. 1999), *abrogated on other grounds by Burlington Northern & Santa*

---

[7] Defendants cite *Smith v. UAW-GM Legal Servs. Plan*, 48 Fed. Appx. 338 (2d Cir. 2002)(unpublished) in support of their argument that plaintiff's hostile-work environment claim is time-barred. In *Smith*, the plaintiff was on leave during the 300-day period before she filed her claim with the New York Division of Human Rights. *Smith*, 48 Fed. Appx. at 340. Here, plaintiff returned to work on December 9, 2004 and alleges that the hostile work environment resumed upon her return. Accordingly, the facts of *Smith* are distinguishable.

-22-

*Fe Ry. Co. v. White*, 548 U.S. 53 (2006).  Factors to consider in determining whether an environment is hostile or abusive include: "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance."  *Harris,* 510 U.S. at 23. Although "[t]he incidents comprising a hostile work environment claim need not make reference to any trait or condition on the basis of which the discrimination has occurred" they must occur under circumstances in which "the incidents can reasonably be interpreted as having taken place on the basis of that trait or condition."  *Svenningsen v. Coll. of Staten Island*, No. 01-CV-7550, 2003 WL 21143076, at *2 (E.D.N.Y. 2003) (citing *Gregory v. Daly*, 243 F.3d 687, 694-95 (2d Cir. 2001)).  Isolated incidents of offensive conduct are generally inadequate to establish a discrimination claim, and plaintiff must show "either a single incident was extraordinarily severe, or that a series of incidents was sufficiently continuous and concerted" to cause a change in the work environment.  *Howley v. Town of Stratford*, 217 F.3d 141, 153 (2d Cir. 2000) (citation omitted).

"[I]t is axiomatic that in order to establish a sex [or race]-based hostile work environment under Title VII, a plaintiff must demonstrate that the conduct occurred because of her sex [or race]."  *Alfano v. Castello,* 294 F.3d 365, 374 (2d Cir.

-23-

2004)(internal quotation marks and citations omitted).  The

Second Circuit has cautioned:

> Everyone can be characterized by sex, race . . . and many
> bosses are harsh, unjust, and rude. It is therefore
> important in hostile work environment cases to exclude from
> consideration personnel decisions that lack a linkage or
> correlation to the claimed ground of discrimination.
> Otherwise, the federal courts will become a court of
> personnel appeals.

*Alfano*, 294 F.3d at 377 (citations omitted).

Plaintiff alleges that from April 2003 until January 2005,

defendants Hoy and Barnett micro-managed her, issued multiple

counseling memoranda, treated her in a condescending manner, and

gave her instructions that she was then chastised for following.

Plaintiff also alleges that following her reinstatement in

December 2004 defendants Hoy and Barnett did not allow her to

leave her desk or use a telephone.

Even assuming that defendants Hoy's and Barnett's behavior

altered the conditions of plaintiff's employment, no reasonable

juror could find on the basis of the admissible evidence

submitted by plaintiffs that their behavior was motivated by

racial and/or sexual bias.  Plaintiff offers affidavits

concerning two incidents that allegedly demonstrate Hoy's animus:

(1) a racist comment that an Administrate Law Judge told her that

Hoy had uttered; and (2) co-worker Deborah Raiford's recollection

of Hoy's alleged use of the term "niggerly" in a memorandum.

Apart from these two allegedly racist comments, neither of which

-24-

involved plaintiff, the record only consists of facially neutral
incidents.  Although courts may consider race- and sex-neutral
incidents among the totality of the circumstances, the facially
neutral incidents that plaintiff offers are insufficient to
establish a hostile work environment.  *Alfano*, 249 F.3d at 378
(there must be "some circumstantial or other basis for inferring
that incidents sex- [and race-]neutral on their face were in fact
discriminatory").

Plaintiff offers her own deposition testimony and
declaration as support for her claim as well as the deposition
testimony of co-worker Deborah Raiford who stated her personal
belief that plaintiff and other employees were discriminated
against because of their race and gender.  Plaintiff's conclusory
allegations provide an insufficient basis from which to infer
that the defendants' facially neutral acts were discriminatory.
*See Schwapp v. Town of Avon*, 118 F.3d 106, 110 (2d Cir. 1997)
("[A] plaintiff must provide more than conclusory allegations of
discrimination to defeat a motion for summary judgment.")(citing
*Meiri v. Dacon*, 759 F.2d 989, 998 (2d Cir. 1985)); *Payne v. MTA
New York City Transit Auth.*, 349 F.Supp.2d 619, 627 (E.D.N.Y.
2004)(plaintiff's "unsubstantiated, subjective belief, as
embodied in his deposition testimony" that employer attempted to
remove him from his position because of his race insufficient to
withstand summary judgment).  Co-worker Raiford's personal

-25-

beliefs are also conclusory and speculative.  *Hester v. BIC Corp.*, 225 F.3d 178, 182 (2d Cir. 2000)("in an employment discrimination action, Rule 701(b) bars lay opinion testimony that amounts to a naked speculation concerning the motivation for a defendant's adverse employment decision"); *Minus v. West*, No. 99-CV-7229, 2003 WL 21295122, at *4 (E.D.N.Y. 2003)(co-worker's conclusory allegations that employer "did not want blacks in his office" and that he turned his head away when plaintiff passed him in the hall were insufficient to withstand summary judgment). Even considered together, the two discriminatory comments allegedly made by Hoy, the facially neutral incidents, and the conclusory allegations of plaintiff and her co-worker are insufficient to support an inference that defendants Hoy and Barnett were motivated by discriminatory animus, since no reasonable juror could find on this evidence that plaintiff was subjected to a hostile work environment.

*3. Retaliation*

To make out a prima facie case of retaliation, the employee must demonstrate: "(1) participation in a protected activity known to the defendant; (2) an employment action disadvantaging the plaintiff; and (3) a causal connection between the protected activity and the adverse employment action." *Hunter v. St. Francis Hosp.*, 281 F.Supp.2d 534, 546-47 (E.D.N.Y. 2003)(citing *Quinn v. Green Tree Credit Corp.*, 159 F.3d 759, 769 (2d Cir.

-26-

1998), *abrogated in part on other grounds by National R.R.
Passenger Corp. v. Morgan*, 536 U.S. 101 (2002)).  A protected
activity is any "action taken to protest or oppose statutorily
prohibited discrimination." *Cruz v. Coach Stores, Inc.*, 202 F.3d
560, 566 (2d Cir. 2000).  In order to prove that she engaged in a
protected activity, plaintiff need not show that conduct
complained of was unlawful as long as the plaintiff had a "*good
faith, reasonable belief* that the underlying challenged actions
of the employer violated the law."  *Quinn*, 159 F.3d at 769
(emphasis in original)(quoting *Manoharan v. Columbia Univ.
College of Physicians & Surgeons,* 842 F.2d 590, 593 (2d. Cir.
1988)).  The adverse employment action must be one that a
reasonable employee would have found materially adverse; i.e., it
"might have dissuaded a reasonable worker from making or
supporting a charge of discrimination." *Burlington N. & Sante Fe
Ry. Co.*, 548 U.S. at 68 (internal quotation marks and citation
omitted).

        Once plaintiff establishes a prima facie case, a defendant
must offer a legitimate, non-retaliatory reason for its actions,
but "need only show that it acted on a neutral basis" and "need
not prove the absence of discrimination." *Whaley v. City Univ.
of New York,* No. 04-CV-7107, 2008 WL 2200230, at *20 (S.D.N.Y.
2008)(citing *Lieberman v. Gant*, 630 F.2d 60, 65 (2d Cir. 1980)).
Plaintiff then bears the burden of proving that defendant's

-27-

reason is pretextual. *Id.* (citing *Reed v. A.W. Lawrence & Co.*, 95 F.3d 1170, 1181 (2d Cir. 1996)).

The parties do not dispute that plaintiff engaged in a protected activity by filing an EEOC complaint in November 2005, that defendants were aware of the complaint, and that plaintiff was thereafter suspended and given notice that the Division of Parole was seeking her termination. However, defendants argue that plaintiff has failed to satisfy her burden of establishing causation.

Causation "can be established by showing that the retaliatory action was close in time to the protected activity; that other similarly situated employees were treated differently; or with direct proof of retaliatory animus." *Uddin v. City of New York*, 427 F.Supp.2d 414, 432 (S.D.N.Y. 2006) (citing *Sumner v. United States Postal Serv.*, 899 F.2d 203, 209 (2d Cir. 1990)); *DeCintio v. Westchester County Med. Center*, 821 F.2d 111, 115 (2d Cir. 1987), *cert. denied*, 484 U.S. 965 (1987).

There is no "bright line to define the outer limits beyond which a temporal relationship is too attenuated to establish a causal relationship between the exercise of a federal constitutional right and an allegedly retaliatory action." *Gorman-Bakos v. Cornell Coop. Extension of Schenectady County*, 252 F.3d 545, 554 (2d Cir. 2001)(collecting cases). Although district courts in this Circuit have generally rejected time

-28-

periods greater than one year, *Deravin v. Kerik*, No. 00-CV-7487, 2007 WL 1029895, at *11 (S.D.N.Y. 2007)(collecting cases), within the period of one year, district courts have varied in their determinations as to the temporal proximity required to support an inference of causation.  *Harrison v. North Shore Univ. Hosp.*, No. 04-CV-2033, 2008 WL 656674, at *12 (E.D.N.Y. 2008)(one to two months sufficient to support prima facie case); *Santos v. Costco Wholesale, Inc.,* 271 F.Supp.2d 565, 575 (S.D.N.Y. 2003)(approximately three months sufficient to establish prima facie case); *Suggs v. Port Auth. of N.Y. and N.J.*, No. 97-CV-4026, 1999 WL 269905, at *6 (S.D.N.Y. 1999)(six months sufficient); *cf. Carter v. New York*, 310 F.Supp.2d 468, 478, n.5 (N.D.N.Y. 2004), *aff'd* 151 Fed. Appx. 40 (2d Cir. 2005) (four months insufficient); *Battice v. Phillip*, No. 04-CV-669, 2006 WL 2190565, at *8 (E.D.N.Y. 2006)(over four months insufficient to support an inference of causal connection).

Here, the approximately four months that passed between the filing of the EEOC complaint and plaintiff's suspension are sufficient to support a prima facie case.[8]  Even if the temporal proximity were insufficient to establish causation, plaintiff has

---

[8] Defendants incorrectly argue that the thirteen months that passed between plaintiff's March 2006 suspension and the 2003 grievances are insufficient to support a prima facie case.  Plaintiff's claims of retaliation are based on the filing of the November 2005 EEOC complaint and not the 2003 grievances.

-29-

raised a triable issue of fact as to whether similarly situated employees were treated differently.

"[T]he standard for comparing conduct requires a reasonably close resemblance of the facts and circumstances of plaintiff's and comparator's cases, rather than a showing that both cases are identical." *Graham v. Long Island R.R.*, 230 F.3d 34, 40 (2d Cir. 2000) (citing *Conward v. Cambridge Sch. Comm.*, 171 F.3d 12, 20 (1st Cir. 1999)).  "[T]he determination of whether two employees are similarly situated in all material respects is based on '(1) whether the plaintiff and [her] comparators were subject to the same workplace standards and (2) whether the conduct for which the employer imposed discipline was of comparable seriousness.'" *McDowell v. T-Mobile USA, Inc.,* No. 04-CV-2909, 2007 WL 2816194, at *9 (E.D.N.Y. 2007)(quoting *Graham,* 230 F.3d at 39-41).  "When a plaintiff's misconduct is objectively more serious than that of a proposed comparator, differential treatment by the employer does not create an issue of fact that will defeat a motion for summary judgment." *Conway v. Microsoft*, 414 F.Supp.2d 450, 464 (S.D.N.Y. 2000)(citations omitted).

Assuming that the employees in the comparison group were subject to the same workplace standards (and the parties do not suggest otherwise), plaintiff has raised a triable issue of fact as to whether she was subjected to differential treatment. Defendants argue that no other employee was disciplined for

-30-

failing to register a gun, possessing an unauthorized gun, and losing that gun.  However, plaintiff was only charged with possession of an unauthorized gun.  At least one example exists in the record of an employee who was given a fifteen-day suspension without pay for failing to report an unauthorized weapon, failing to safeguard the weapon, and possession of an unreported weapon.  P.A.B. Attachment to Notice of Discipline, Burgos Decl. Exh. I.  Other employees with weapons-related charges were disciplined with a one-week suspension for the loss of an unauthorized weapon and failure to safeguard the weapon, as well as a three-month suspension for possession of an unauthorized weapon in court.  Division of Parole Discipline Records, Pl. Exh. 5.  Therefore, a reasonable juror could find that plaintiff was subject to differential treatment.

In response to plaintiff's prima facie case of retaliation, defendants offer a legitimate, non-retaliatory reason for her suspension based on their concern about plaintiff's responsibility as a law enforcement officer due to her possession and subsequent loss of an unauthorized weapon.  Plaintiff argues that defendants' reason for her suspension is pretextual because similarly situated officers were given preferential treatment. As discussed *supra,* the comparisons to similarly situated officers raise a triable issue of fact.  Accordingly, plaintiff's March 2006 retaliation claim withstands summary judgment.

-31-

Plaintiff also brings a retaliation claim based on the April 27, 2006 filing of the complaint in the instant action and the subsequent June 9, 2006 termination.  Plaintiff has established a prima facie case based on the temporal proximity of the protected action and her termination.  *See, e.g., Harrison v. North Shore Univ. Hosp.*, No. 04-CV-2033, 2008 WL 656674, at *12 (E.D.N.Y. 2008)(one to two months sufficient to support prima facie case)(citations omitted).  Defendants' legitimate, non-retaliatory reason for plaintiff's termination is that the termination was made effective after plaintiff withdrew her offer to resign and after she failed to appeal the charges within the specified period of time as explained in the termination letter sent to her.  In response, plaintiff argues that defendants did not inform her attorney about their decision to make the termination effective.  Assuming that defendants had an obligation to inform plaintiff's counsel prior to terminating plaintiff and viewing the facts in the light most favorable to plaintiff, plaintiff has raised a triable issue of fact as to whether defendants' proffered reason is pretextual. *Petrovits v. New York City Transit Auth.*, No. 95-CV-9872, 2002 WL 338369, at *8 (S.D.N.Y. 2002)(holding that although a "[v]iolation of an organization's internal procedures alone is insufficient to create an inference of discrimination . . . [the] [f]ailure to follow internal procedures can . . . be evidence of pretext")

-32-

(internal quotation marks and citations omitted); *see also*
*Sklaver v. Casso-Solar Corp.*, No. 02-CV-9928, 2004 WL 1381264, at
\*9 (S.D.N.Y. 2004).  Accordingly, defendants' motion for summary
judgment on plaintiff's retaliation claim with respect to the
June 9, 2006 effective date of termination is denied.

*4. Disparate Treatment*

In order to prevail on race and gender disparate treatment
discrimination claims, "plaintiff must first establish a prima
facie case by demonstrating that: (1) she is a member of a
protected class; (2) her job performance was satisfactory; (3)
she suffered adverse employment action; and (4) the action
occurred under conditions giving rise to an inference of
discrimination."  *Demoret v. Zegarelli,* 451 F.3d 140, 151 (2d
Cir. 2006)(citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792,
802 (1973)).

The parties do not dispute the first three aspects of
plaintiff's prima facie claim.  However, defendants argue that
the circumstances surrounding plaintiff's 2006 suspension and
termination do not support an inference of discrimination based
on plaintiff's sex and/or race.

In the absence of direct evidence of defendants'
discriminatory intent in suspending and terminating her,
plaintiff argues that similarly situated employees outside her
protected group were disciplined in a less severe manner.

-33-

Although the parties have provided the Court with Division of
Parole disciplinary records, the records do not state the
employees' race or sex and plaintiff has failed to identify which
employees were outside of her protected group.  By failing to
identify the race and sex of the employees in the comparison
group, plaintiff has failed to meet her burden of establishing a
prima facie case.  Accordingly, plaintiff's disparate treatment
claim with respect to the 2006 suspension and termination is
dismissed.

Section 1981 Claims[9]

        Section 1981 states in relevant part "[a]ll persons within
the jurisdiction of the United States shall have the same right .
. . to make and enforce contracts . . . as is enjoyed by white
citizens[.]"  42 U.S.C. § 1981(a).  Section 1981 "thus outlaws
discrimination with respect to the enjoyment of benefits,
privileges, terms, and conditions of a contractual relationship,
such as employment." *Patterson v. County of Oneida*, 375 F.3d
206, 225 (2d Cir. 2004)(citations omitted).  In order to
vindicate one's rights under § 1981 against a state actor, a
plaintiff must pursue her claim under 42 U.S.C. § 1983.
*Patterson,* 375 F.3d at 225 ("the express cause of action for
damages created by § 1983 constitutes the exclusive federal

_____

        [9] Because plaintiff's § 1981 claim against the Division of Parole is
barred on sovereign immunity grounds, *see supra*, only plaintiff's claims
against the individual defendants are considered here.

-34-

remedy for violation of the rights guaranteed in § 1981 by state governmental units . . . " (quoting *Jett v. Dallas Indep. School Dist.*, 491 U.S. 701, 733 (1989)).

Here, plaintiff has failed to plead a claim pursuant to § 1983. However, plaintiff argues that the failure to plead a § 1983 claim is a typographical error and that throughout the course of the proceedings the defendants were aware that plaintiff was proceeding under § 1983. Relying on *Lombard v. Bd. of Educ.,* 784 F.Supp. 1029 (E.D.N.Y. 1992)(amending *pro se* plaintiff's complaint *sua sponte* to add § 1983 claim where defendant was aware that plaintiff should have pleaded a § 1983 claim instead of a Fourteenth Amendment claim, the elements of the claims were the same and no further discovery would be required) plaintiff argues that the Court should *sua sponte* amend the complaint or grant plaintiff leave to amend the complaint.

"Leave to file an amended complaint 'shall be freely given when justice so requires,' Fed. R. Civ. P. 15(a), and should not be denied unless there is evidence of undue delay, bad faith, undue prejudice to the non-movant, or futility. *Milanese v. Rust-Oleum Corp.,* 244 F.3d 104 (2d Cir. 2001)(citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

Since most of the substantive standards for evaluating plaintiff's Title VII employment discrimination claims are the same as those which apply to § 1981 claims, *Tilghman v. Waterbury*

-35-

*Bd. of Educ.*, 154 Fed. Appx. 221, 223 (2d Cir. 2005)(citing Patterson, 375 F.3d at 225), amendment of the complaint will not be futile, require the re-opening of discovery, or prejudice the defendants.  There is also no evidence of bad faith on plaintiff's part.  Accordingly, plaintiff is granted leave to file an amended complaint alleging violations of § 1983 within 30 days of the date of this opinion.

New York State and City Claims

Although employment discrimination claims under New York State and New York City law are evaluated under the same legal framework as Title VII claims, *McDowell v. T-Mobile USA, Inc.*, No. CV-04-2909 (DGT), 2007 WL 2816194, at *7 n.16 (E.D.N.Y. 2007),[10] unlike Title VII, both New York State and City law provide for individual liability, *Feingold v. New York,* 366 F.3d 138, 158-59 (2d Cir. 2004), and have three-year statutes of limitations.  McKinney's CPLR § 214(2); N.Y. City Admin. Code § 8-502(d).  Having dismissed plaintiff's state and city claims against the Division of Parole on sovereign immunity grounds, I

---

[10] I note, however, that claims under New York City law are not controlled by Title VII analysis.  "Claims brought under City Human Rights Law are analyzed using state and federal rights statutes yet are independent from those legal frameworks.  While claims brought under the City Human Rights Law have traditionally been subject to the same analytical framework as claims brought under Title VII, the Restoration Act requires independent construction and permits the use of federal and state law interpretations only as a floor, not a ceiling [citing the Local Civil Rights Restoration Act, N.Y.C. Local Law No. 85 of 2005 (Oct. 3, 2005)] . . . Thus . . . Title VII jurisprudence is a useful guide for CHRL claims, but does not control the analysis of CHRL claims."  *Pugliese v. Long Island R.R. Co.*, No. 01 CV 7174(NGG), 2006 WL 2689600, at *11 (E.D.N.Y. 2006); *accord*, *Selmanovic v. NYSE Group, Inc.*, No. OG Civ. 3046 (DAB), 2007 WL 4563431, at *3-4 (S.D.N.Y. 2007).

-36-

only consider plaintiff's remaining state and city claims against

the individual defendants.

*1. Hostile Work Environment Claims*

     Plaintiff's hostile work environment claims stem from the

alleged discriminatory actions of defendants Hoy and Barnett.

Based on the Court's earlier conclusion that no reasonable juror

could find that defendants Hoy and Barnett subjected plaintiff to

a hostile working environment under Title VII, plaintiff's state

and city hostile work environment claims against defendants Hoy

and Barnett are dismissed.  In the absence of a hostile work

environment, plaintiff's claim that defendants Burgos and Oeser

are liable for their failure to investigate the hostile work

environment also fails.  *See Curtis v. Citibank,* 2002 WL 27780*,*

at *3*,* n.6 (S.D.N.Y. 2002) (concluding that "where there is no

competent evidence establishing a hostile work environment in the

first place" an employer may not be held liable for the failure

to investigate and prevent the existence of a hostile work

environment).  Accordingly, plaintiff's state and city hostile

work environment claims against the individual defendants are

dismissed.

*2. 2006 Suspension and Termination Retaliation and Disparate
Treatment Claims*

     Plaintiff's retaliation claims with the respect to the 2006

suspension and termination against defendants Hoy and Barnett are

dismissed since plaintiff has failed to offer any evidence that

-37-

they were involved in the decision to terminate her.  Plaintiff
had no contact with defendants Hoy or Barnett after her January
2005 transfer and defendant Hoy retired from the Division of
Parole in 2005.  Therefore, no reasonable juror could find that
defendant Barnett or defendant Hoy was involved with the decision
to suspend or terminate plaintiff.

However, plaintiff has demonstrated that defendants Burgos
and Oeser were personally involved with the decision to suspend
and then terminate her.  Oeser Dep. at 103; Burgos Dep. at 147-
49.  Applying the Title VII standard for a retaliation claim, a
reasonable juror could find that defendants Burgos and Oeser are
individually liable for plaintiff's 2006 suspension and
termination in retaliation for filing the EEOC complaint.
Therefore, plaintiff's state and city retaliation claims against
defendant Burgos and Oeser with respect to her 2006 suspension
and termination survive summary judgment.

Plaintiff's state and city disparate treatment claims
against all defendants with respect to the 2006 suspension and
termination are dismissed.  Plaintiff has failed to establish
that defendants Hoy or Barnett were involved with the 2006
employment decisions.  With respect to defendants Burgos and
Oeser, plaintiff offers only conclusory allegations of
discriminatory intent that are insufficient to withstand summary
judgment, *see Schwapp*, 118 F .3d at 110, and she provides no

-38-

comparison group to support her assertion that similarly situated employees outside of her protected group were treated preferentially.  Accordingly, plaintiff's state and city disparate treatment claims with respect to the 2006 suspension and termination are dismissed.

*3. 2004 Suspension Retaliation and Disparate Treatment Claims*

Since plaintiff's 2004 suspension falls within the state and city statutes of limitations, I consider the merits of her retaliation and disparate treatment claims in connection with the 2004 suspension.

With respect to the retaliation claim, plaintiff has failed to meet her burden of establishing the causation element required for a prima facie case.  Plaintiff engaged in the protected activity of filing two grievances in August 2003.  Plaintiff was suspended in March 2004, seven months after filing the grievance, and terminated in April 2004, eight months after filing the grievance.  The seven- and eight-month time lapses are insufficient to support an inference of causation.

In any event, defendants have offered a legitimate, non-discriminatory ground for the suspension based on plaintiff's pending criminal charges, which, as noted by the arbitrator, was proper under the collective bargaining agreement.  Plaintiff's response is limited to her assertions that the charges were false and the hearsay statements of two co-workers who told her that

-39-

defendant Hoy was responsible for the suspension.  Viewing the
facts in the light most favorable to plaintiff, no reasonable
juror could find that defendants' explanation was pretextual.

Similarly, plaintiff's disparate treatment claim must be
dismissed.  Other than a she-said-he-said allegation that that
defendant Hoy was responsible for her suspension and conclusory
allegations that he was motivated by gender and racial animus,
plaintiff has failed to offer any evidence that would support an
inference of discriminatory intent on the part of defendants with
respect to the 2004 suspension.  Accordingly, plaintiff's 2004
retaliation and disparate treatment claims are dismissed.

4. *Discipline and Excessive Scrutiny*

Plaintiff brings discrimination claims on account of the
issuance of counseling memoranda in 2003 and micro-management
from 2003 until her transfer out of the Queens office in January
2005.  Although counseling memoranda were placed in her personnel
file, there are no facts in the record from which a reasonable
juror could infer that the memoranda led to a materially adverse
change in the conditions of her employment.  Accordingly, no
reasonable juror could find that the counseling memoranda caused
a materially adverse change in her working conditions.  *See Weeks
v. NYS Div. Parole*, No. 00-CV-865, 2002 WL 32096593 (E.D.N.Y.
2002), *aff'd by* 78 Fed. Appx. 764, 765-66 (2d Cir. 2003); *Hill v.
Rayboy-Brauestein*, 467 F.Supp.2d, 336, 354 (S.D.N.Y. 2006).

-40-

Similarly, micro-management and increased scrutiny do not constitute adverse employment actions in the absence of other changes in the conditions of employment. *Uddin v. City of New York*, 427 F.Supp.2d 414, 429 (S.D.N.Y. 2006) ("excessive scrutiny do[es] not constitute adverse employment actions in the absence of other negative results such as decrease in pay or being placed on probation"); *Hill v. Rayboy-Brauestein,* 467 F.Supp.2d 336, 355 (S.D.N.Y. 2006). Plaintiff has failed to allege a change in the terms of her employment on account of the micro-management. Accordingly, plaintiff's discrimination claims with respect to the micro-management and increased security do not withstand summary judgment.

**Conclusion**

For the reasons set forth above, defendants' motion is granted in part and denied in part. The Clerk is hereby directed to transmit a copy of the within to the parties and the Magistrate Judge.

SO ORDERED.

Dated:     Brooklyn, NY
           September 23, 2008


               By: /s/ Charles P. Sifton (electronically signed)
                   United States District Judge